UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICHELLE TATE                                         CIVIL ACTION

VERSUS                                                NO. 13-6552

CAROLYN W. COLVIN, ACTING                             SECTION "C" (2)
 COMMISSIONER OF SOCIAL SECURITY


# ORDER ON MOTION;
# FINDINGS AND RECOMMENDATION

Plaintiff, Nichelle Tate, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration ("Commissioner"), denying plaintiff's claim for supplemental

security income benefits ("SSI") under Title XVI of the Act.  42 U.S.C. §§ 405(g),

1381a.  This matter was referred to a United States Magistrate Judge pursuant to 28

U.S.C. § 636(b) and Local Rule 73.2(B).

I.      PROCEDURAL HISTORY

Tate filed her application for SSI on July 6, 2011, alleging disability beginning

August 15, 2010, due to "congested [sic] heart failure," hypertension, kidney failure,

chest pain and blurred vision.  (Tr. 55, 123, 127).  After her claim was denied at the

agency level, she requested a hearing before an Administrative Law Judge (ALJ), which

was held on April 23, 2012.  On May 10, 2012, the ALJ issued a decision denying the

application for benefits.  (Tr. 19-29).  The Appeals Council denied plaintiff's request for

review on January 23, 2013.  (Tr. 11-13).

On July 3, 2013, Tate's counsel submitted to the Appeals Council a new brief and additional evidence consisting of a letter from DaVita Metairie Dialysis Center dated April 16, 2013. (Tr. 166-67). On August 29, 2013, the Appeals Council set aside its earlier decision so it might consider the new evidence, but it again denied the request for review. The Appeals Council found that the April 16, 2013, letter was not relevant to the time period of the ALJ's decision eleven months earlier. The Appeals Council returned the letter to plaintiff, and it is not in the record. (Tr. 4-7). After the Appeals Council denied review, the ALJ's decision became the Commissioner's final decision for purposes of this court's review.

Plaintiff filed a timely memorandum of facts and law. Record Doc. No. 18. Defendant filed a timely reply memorandum. Record Doc. No. 19.

II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.      Substantial evidence does not support the ALJ's finding that Tate's impairments are not of listing level severity.

B.      Substantial evidence does not support the ALJ's residual functional capacity finding.

C.      Substantial evidence does not support the ALJ's credibility finding.

Tate submitted new evidence with her memorandum. The court treats this as a motion to submit new evidence. Based on that evidence in combination with the entire

record, she asks the court to find either that she is disabled or that the new evidence warrants a remand to the Commissioner for additional findings of fact.

Having considered the record, the submissions of the parties and the applicable law, and for the reasons discussed below, IT IS ORDERED that plaintiff's motion to supplement the record with new evidence is DENIED.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Tate has severe impairments of obesity, coronary artery disease, anemia secondary to chronic renal insufficiency/iron deficiency, chest pain, sleep apnea and chronic renal insufficiency secondary to uncontrolled essential hypertension.

2.   She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, App. 1, including specifically Listing 4.02 for chronic heart failure.

3.   Plaintiff has the residual functional capacity to perform sedentary work, except she must have a sit/stand option and the ability to elevate her legs twice a day for ten minutes at a time.

4.   Tate's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.   She has no past relevant work.

6.   Considering Tate's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform, such as general office clerk, receptionist and interviewer.

8.     She has not been under a disability, as defined in the Act, from May 16, 2011, the date of the application, through the date of the decision.

(Tr. 21-27).

IV.     ANALYSIS

A.     Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The

Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>Luckey v.</u> <u>Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for SSI, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012). The regulations include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity.[1]  Id. §§ 404.1520, 416.920;

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue,

501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry

terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If

she successfully carries this burden, the burden shifts to the Commissioner to show that

other substantial gainful employment is available in the national economy that the

claimant is capable of performing.  When the Commissioner shows that the claimant is

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. <u>Alexander</u>, 412 F. App'x 720-21; <u>Perez</u>, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" <u>Chrisner v. Astrue</u>, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th Cir. 1991)); <u>accord Perez</u>, 415 F.3d at 463.

B.    <u>Factual Background</u>

Tate testified that she was 42 years old, is five feet six inches tall and weighs 230 pounds. (Tr. 36). She explained that she did not undergo scheduled heart tests because her sister died around that time and she wanted to be with her family. She stated that she followed up with her primary care physician, Dr. Vu, but she never had the heart tests.

Plaintiff testified that she takes her medications as prescribed. She said that the medicine she was taking was not strong enough and that her primary care physician "upgraded" her medicine. (Tr. 37-38). She stated that, although her blood pressure is uncontrollable, her doctor had it under control. She said her medications cause her to sleep.

Tate stated that she breathes very heavily if she walks or moves around a lot, so she cannot walk very far. She testified that she uses an asthma machine three times a

day.  She said her right leg gets numb and sometimes gives out.  She stated that, once she takes her medicine, she stays in bed.

Plaintiff said she lived with her mother last year and helped with her mother's daycare business by changing diapers and feeding the children.  She stated that it was not a job and that she just helped out occasionally because she was in the house.  (Tr. 38). She testified that she never filed a tax return.  She said she worked as a sitter in the mid-1980s, which was the only job she ever had.  She stated that she went to school for a CND[2] license, but she "never got a career for that."  She testified that no physical reason prevented her from working during her earlier years.

Tate said she cannot work now because her hypertension medications put her to sleep and make her dizzy.  (Tr. 39-40).  She stated that she lost 25 pounds by dieting in September 2011, but gained 10 pounds back.  As the ALJ read from a medical record, she confirmed that she had reported in 2011 that she became short of breath after walking one block and that she had a pins and needles sensation in her right upper chest two to three times a week, which lasted about "ten days,"[3] but that she was otherwise able to walk without difficulty and could sit for extended periods if she could adjust her position from time to time.  (Tr. 40).

---

[2]According to the documentary evidence, this should probably be CNA (Certified Nursing Aide).

[3]The ALJ misspoke.  Miljana Mandich, M.D., who conducted a consultative examination of Tate on August 24, 2011, states that Tate reported that the sensation lasted about ten <u>minutes</u>.  (Tr. 235).

Plaintiff testified that she has trouble holding her urine and has to go to the bathroom frequently. She stated that her right leg is numb and gives out sometimes. She said her doctors told her that her heart problems and high blood pressure negatively affect her eyesight and cause leg numbness. She stated that her doctor told her to elevate her legs because they often swell and hurt. (Tr. 41). She testified that she elevates her legs twice a day for an hour each time, as the doctor advised her to do. She said she props her legs on three pillows if she is lying on her back and props them on one pillow if she is sitting.

Tate stated that her kidney doctor told her that the next step would be dialysis because of her blood pressure. (Tr. 42). She said he did not tell her how long it would be before she needed dialysis, but he told her that "'you're close because your kidneys [are] not getting better.'" She testified that she wears Depends underwear when she goes out of the house in case she cannot get to the bathroom on time. She said she has to get to the bathroom quickly because she cannot hold her urine.

Plaintiff testified that she takes medications three times a day and that they make her very tired. She said the medications, not her heart, kidney and anemia problems, cause the fatigue. (Tr. 43). She said she has to lie down after she takes her medicine.

Tate stated that the top number of her blood pressure was 236 before she took her medicine the previous day and 199 after she took the drugs. She did not remember the

previous day's bottom number of her blood pressure. She testified that the bottom number generally stays high even after she takes the medicine.

Plaintiff stated that she cannot cook any more because her arms go numb and she will drop the pot. (Tr. 44). She said she plays with her grandchildren, but cannot run after them, and can no longer cut the grass because she cannot breathe well enough to push the lawnmower. She stated that she no longer drives because her eyesight is blurry. She testified that an eye doctor told her she needs bifocals.

Plaintiff's attorney confirmed the ALJ's comment that the medical records do not reflect that any doctor told Tate to elevate her legs. Her attorney stated that plaintiff has had repeated congestive heart failure,[4] which could cause the problems about which she testified. (Tr. 45-46).

C.    Vocational Expert Testimony

A vocational expert, Mary C. Elvir, testified at the hearing that plaintiff had no relevant work within the last 15 years. The ALJ posed a hypothetical of a 40-year-old person with a high school education and no work experience who is limited to less than a full range of sedentary work in that she must have a sit/stand option. (Tr. 46). Elvir clarified that the ALJ meant that such a person could lift the requirements of sedentary

---

[4]"Congestive heart failure is a condition in which the heart's function as a pump is inadequate to deliver oxygen rich blood to the body. . . . The diminished pumping ability of the ventricles due to muscle weakening is called systolic dysfunction." WebMD Answers (WebMD, LLC posted Sept. 7, 2010), http://answers.webmd.com/answers/1174106/what-is-congestive-heart-failure (visited Sept. 8, 2014).

work, but needs a sit/stand option throughout the day.  The vocational expert testified that unskilled positions are available in significant numbers which would allow those limitations, such as general office clerk, receptionist and interviewer.  (Tr. 47).

The ALJ modified the hypothetical to add that the hypothetical person would need to elevate her legs twice a day for ten minutes at a time.  Elvir testified that this would not erode the occupational base of the jobs she had described.  The ALJ then posed a third hypothetical of the same person who, because of coronary issues, uncontrolled essential hypertension, occasional headaches and general medication issues would be required to miss work as often as three times a month.  Elvir testified that this individual would not be able to maintain the jobs.  (Tr. 48).

Plaintiff's attorney modified the ALJ's first hypothetical to include a limitation that the person had to lie down for a couple of hours during the day because of fatigue. The vocational expert testified that this individual could not perform any of the jobs she had described.  The attorney posed another hypothetical to include a requirement that the person must elevate her legs for a couple of hours per day.  Elvir stated that such a person could not perform the jobs.  (Tr. 49).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 22-26).  I find the ALJ's summary of the medical evidence

substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Motion to Submit New Evidence

Tate has attached to her memorandum two documents that are not in the record. She argues that these materials support a finding that she was disabled during the relevant time period. The first exhibit is a letter from the Commissioner to Tate dated February 11, 2014, which is 21 months after the ALJ's decision in the instant case. Plaintiff states in her memorandum that, after the Appeals Council denied review on August 29, 2013, she reapplied for SSI in September 2013. She says that her application was granted and she began receiving benefits in October 2013. She states that she does not have the letter granting her second application. Instead, she submits a letter from the Commissioner advising that her monthly benefit amount would be reduced in March 2014 to account for overpayments previously made to her at unspecified times. Plaintiff's Exh. A, Record Doc. No. 18-2, letter dated February 11, 2014.

Tate's second exhibit is a letter "To Whom It May Concern" from Nicole A. Harris, a licensed social worker at DaVita Metairie Dialysis Center, dated April 16, 2013. Plaintiff's Exh. B, Record Doc. No. 18-3. Plaintiff submitted this letter to the Appeals Council, which returned it to her without placing a copy in the record when it denied review, so that she could use it as evidence if she reapplied for benefits. (Tr. 5). Harris states in the letter that "Tate suffers from End Stage Renal Disease. She receives dialysis

12

treatments here at Metairie [D]ialysis 3 times per week.  These treatments will continue

throughout the remainder of her life."  Plaintiff's Exh. B, Record Doc. No. 18-3, at p. 2.

Plaintiff argues that these two documents, combined with the records that the ALJ

considered, establish that she was disabled as of the date of the ALJ's decision on

May 10, 20<u>12</u>.

1.    <u>Standards of review</u>

It is well established that this court may <u>not</u> issue factual findings on new medical

evidence and may review such evidence only to determine if a remand to the

Commissioner is appropriate.  <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007)

(citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir.

1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995).   Accordingly, I must

determine whether this case should be remanded so that the Commissioner may consider

the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing

that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to

incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g);

<u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314 (5th Cir. 2010); <u>Joubert v. Astrue</u>, 287 F. App'x

380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Martinez</u>, 252 F. App'x at 587

(citing <u>Haywood</u>, 888 F.2d at 1471).

"The Appeals Council is permitted to consider additional evidence only if it is new, material, and related to the period on or before the ALJ's hearing decision." Id. (citing 20 C.F.R. §§ 404.970(b), 404.976(b)); accord Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1983).

"Evidence that was not in existence at the time of the administrative . . . proceedings, meets the 'new' requirement for remand to the [Commissioner]." Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quotation omitted) (citing Haywood, 888 F.2d at 1471). However, evidence that "is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)." Wilson v. Astrue, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987)) (emphasis added); accord Ferrari, 435 F. App'x at 314-15; Perkins v. Shalala, No. 93-01940, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Bowman, 706 F.2d at 568.

New evidence must also be material to warrant a remand. The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383. The new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. Id. "For new evidence to be material,

there must exist the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." Hunter, 283 F. App'x at 262 (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)).

Finally, "[t]o demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." Dennison v. Astrue, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing Pierre, 884 F.2d at 803; Skalij v. Chater, 103 F.3d 126, 1996 WL 731580, at *3 (5th Cir. Dec. 4, 1996); see also Mouser v. Astrue, 545 F.3d 634, 637 (8th Cir. 2008) ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing sufficient explanation.") (quotation and citation omitted). The mere "fact that evidence is 'new', meaning that it did not exist at a point in time such that it could have been incorporated into the administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence into the administrative record." Wilson, 2009 WL 2341803, at *4 (citing Pierre, 884 F.2d at 803).

I find that the information submitted by Tate is not new and material, as defined by the Fifth Circuit, for the following reasons.

2.    The subsequent award of SSI benefits

Although Tate has not submitted the Commissioner's decision determining that she is disabled, the court assumes, as she has asserted, that her second application was granted and she began receiving SSI benefits beginning in October 2013.  However, in the absence of a copy of the decision, this court cannot know the findings on which it was based, such as the onset date of disability, the impairment that was found to be disabling, whether plaintiff had a subsequently acquired disability or whether a previously non-disabling condition had deteriorated so as to be newly disabling.

More importantly, the later decision is not material.  If the Commissioner found that Tate was disabled as of her application date in September 20<u>13, fifteen months after</u> the earlier decision that she was not disabled, the later decision is not material to her condition during the relevant time period of August 15, 2010, through May 10, 2012.  Even if she established a new onset date of disability that was shortly after May 10, 2012, "suggest[ing] a potential inconsistency with the ALJ's decision at issue in this case, courts have held that a subsequent favorable decision is not sufficient, by itself, to warrant a sentence six remand."  <u>Estes v. Astrue</u>, No. 1:10-cv-0015, 2012 WL 423372, at *2 (D. Utah Feb. 8, 2012).  The Fifth Circuit has held that

> [w]hether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious <u>at the time of consideration</u>.  Here, the ALJ determined that the evidence at the time indicated [that plaintiff] was not disabled.  We may disturb this judgment

only if "there is a conspicuous absence of credible choices or no contrary medical evidence."

Winston ex rel. D.F. v. Astrue, 341 F. App'x 995, 998 (5th Cir. 2009) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)); accord Davis v. U.S. Comm'r, No. 11-2015, 2014 WL 4072060, at *8 (W.D. La. Aug. 15, 2014); Ordonez v. Astrue, No. 12-2330, 2013 WL 6332454, at *6 (E.D. La. Dec. 4, 2013); Alexander v. Comm'r of Soc. Sec., No. 08-1570, 2010 WL 2428453 at *2 (W.D. La. Apr. 5, 2010), report & recommendation adopted, 2010 WL 2484219 (W.D. La. June 10, 2010), aff'd, 412 F. App'x 719 (5th Cir. 2011).

Two other appeals courts and numerous district courts have ruled that a later favorable decision, standing alone, cannot be material evidence.

> The Sixth Circuit Court of Appeals has held that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." Allen v. Commissioner of Social Security, 561 F.3d 646, 652-53 (6th Cir. 2009). The Third Circuit Court of Appeals has also adopted this position, finding that a subsequent award of benefits did not require "remand or reversal in the absence of new and material evidence, which claimant here has failed to provide." Jackson v. Astrue, 402 Fed. Appx. 717, 718 (3d Cir. 2010) (unpublished). At least two district courts in the Tenth Circuit have followed this position. See Estes v. Astrue, 2012 WL 423372 (D. Utah February 8, 2012) (unpublished); Mosley v. Astrue, [No. 09-CV-02005-LTB,] 2010 WL 3777232 (D. Colo. September 20, 2010) (unpublished).

Baker v. Astrue, No. 11-cv-566-CVE-TLW, 2012 WL 5878876, at *7-8 (N.D. Okla. Oct. 15, 2012) (footnote omitted), report & recommendation rejected on other grounds, 2012 WL 5878877 (N.D. Okla. Nov. 21, 2012); accord Cunningham v. Comm'r of Soc.

Sec., No. 11-2633, 2012 WL 6200379, at *8 (3d Cir. Dec. 13, 2012); Brown v. Colvin, No. 2:12-cv-169-DN-BCW, 2014 WL 1775995, at *7 (D. Utah May 5, 2014); Powers v. Astrue, No. 12-448-JJB, 2013 WL 5522679, at *2 (M.D. La. Oct. 3, 2013); Washington v. Astrue, No. 12-1429, 2013 WL 1787180, at *3-4 (E.D. La. Mar. 13, 2013), report & recommendation adopted, 2013 WL 1787177 (E.D. La. Apr. 25, 2013).

A few courts, including the Ninth Circuit in Luna v. Astrue, 623 F.3d 1032 (9th Cir. 2010), have held to the contrary "that a subsequent allowance of disability benefits may be 'new' and 'material' evidence warranting a remand under 42 U.S.C. § 405(g). These decisions are in the minority on this issue: . . . a growing number of district courts have followed the Sixth Circuit's reasoning" in Allen. Perry v. Astrue, No. 10-11004-DPW, 2012 WL 645890, at *12 (D. Mass. Feb. 27, 2012) (citing Johnson v. Astrue, No. 3:09-2458-JMC-JRM, 2011 WL 902966, at *4 (D.S.C. Mar. 15, 2011); Jirau v. Astrue, 715 F. Supp. 2d. 814, 825-26 (N.D. Ill. 2010); Mosley, 2010 WL 3777232, at *5; Garcia v. Astrue, No. 3:09-cv-26, 2010 WL 3769473, at *3 (D.N.D. Aug. 27, 2010), report & recommendation adopted, 2010 WL 3768462 (D.N.D. Sept. 17, 2010); Brown v. Astrue, No. CV-08-247-Cl, 2009 WL 2750726, at *8 (E.D. Wash. Aug. 25, 2009)).

"A subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." Allen, 561 F.3d at 653. In the instant case, as in Perry,

[plaintiff] does not suggest any particular piece of evidence underlying the subsequent favorable decision [that] he had good cause for not raising in the matter now before me. Although [plaintiff] includes the [favorable] decision in his motion,[5] he does not include any of the underlying evidence, and it is not possible to tell if the evidence discussed in the decision is cumulative, is based on the claimant's deteriorating state after the [earlier] decision, or otherwise fails to meet the "new" and "material" requirements.

Perry, 2012 WL 645890, at *12 (citing Allen, 561 F.3d at 653).

The Sixth Circuit's analysis in Allen "'makes sense because using a subsequent decision as independent evidence is tantamount to a collateral attack on the initial decision. Permitting a claimant to obtain a remand in a similar case would run counter to the need for finality and consistency between SSA disability determinations.'" Atkinson v. Astrue, No. 5:10-CV-298-FL, 2011 WL 3664346, at *17 (E.D.N.C. July 20, 2011), report & recommendation adopted, 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011) (quoting Sayre v. Astrue, No. 3:09-01061, 2010 WL 4919492, at *4 (S.D. W. Va. Nov. 29, 2010)). "The mere fact that a second ALJ weighed the evidence differently does not authorize reversal by a district court; the standard is whether the first ALJ's decision was supported by substantial evidence on the record, not whether it was the only possible reasonable decision." Perry, 2012 WL 645890, at *11 (citing 42 U.S.C. § 405(g); Allen, 561 F.3d at 654; Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2006)).

The Fifth, Sixth and Third Circuits and the majority of the district courts to address this issue have held that a subsequent favorable decision is not material. Based

---

[5]Tate has not even done this.

on those authorities, the Commissioner's granting of SSI benefits to Tate based on her September 2013 application is not material and does not warrant a remand.

3. The letter from Harris

Harris, a social worker, wrote a letter "To Whom It May Concern" dated April 16, 2013, and it is new. Harris states that Tate has end stage renal disease, is receiving dialysis treatments and will need them for the rest of her life. Even assuming without deciding that these statements are true and are based on a diagnosis and opinions by an acceptable medical source, such as a physician,[6] Harris's letter is not material, as defined by the Fifth Circuit.

The letter is dated <u>eleven months after</u> the ALJ's decision. Harris does not state when Tate began undergoing dialysis. However, plaintiff testified at the hearing on April 23, 2012, that her doctor had <u>not</u> yet recommended dialysis. Her Disability Report–Appeal, which is undated but was obviously filed after the ALJ's decision, says that there had been no changes in her condition and does not mention that she had begun or was going to start dialysis. (Tr. 143-47).

Harris's letter therefore does <u>not</u> relate to the period for which benefits were denied, which extended only from the alleged onset date of August 15, 2010 to May 10,

---

[6]Harris, a social worker, is "not an 'acceptable medical source'" and is therefore not qualified to "establish the existence of a medically determinable impairment, give medical opinions, and be considered [a] treating source[ ] whose medical opinions may be entitled to controlling weight." <u>Thibodeaux v. Astrue</u>, 324 F. App'x 440, 445 (5th Cir. May 14, 2009).

2012, the date of the ALJ's decision.  Joubert, 287 F. App'x at 383-84; Sanchez v. Barnhart, 75 F. App'x 268, 270 (5th Cir. 2003) (citing Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001)); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).  The letter contains no "express retrospective medical opinion relating back to the [relevant] period" that addresses any need for dialysis during that period.  McLendon v. Barnhart, 184 F. App'x 430, 432 (5th Cir. 2006) (citing Likes v. Callahan, 112 F.3d 189 (5th Cir. 1997); Ivy v. Sullivan, 898 F.2d 1045 (5th Cir. 1990)).

In addition, Tate has failed to demonstrate a reasonable possibility that the letter would change the outcome of the Commissioner's decision.  Even if Harris's letter contains an admissible diagnosis of end stage renal disease, the mere diagnosis of an impairment "does not establish a claimant's disability claims."  Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)); accord Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames, 707 F.2d at 165.  Plaintiff "must show that she was so functionally impaired by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity."  Id. (emphasis added); accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

In this case, plaintiff's chronic renal disease and other associated conditions are reflected in the medical records dated before May 10, 2012, which the ALJ and the Appeals Council considered. Based on that evidence, the ALJ found that Tate had severe impairments, consisting of obesity, coronary artery disease, anemia secondary to chronic renal insufficiency/iron deficiency, chest pain, sleep apnea and chronic renal insufficiency secondary to uncontrolled essential hypertension. To the extent that the letter from Harris documents pre-existing chronic renal disease, it is merely cumulative of the administrative record and there is no reasonable possibility that it would change the outcome of the Commissioner's decision. Lenoir v. Apfel, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000) (citing Haywood, 888 F.2d at 1471; Pierre, 884 F.2d at 803); Perkins, 1994 WL 523788, at *3; Martin v. Barnhart, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (citing Pierre, 884 F.2d at 803).

To the extent that Harris's letter might indicate that Tate had increased symptoms or recently diagnosed conditions that developed after May 10, 2012, and before April 16, 2013, the evidence demonstrates at best a deterioration of a previously non-disabling condition. Therefore, no reasonable possibility exists that the letter would have affected the ALJ's determination that Tate was not disabled before May 10, 2012. "Remand [cannot] be based on new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition." Lenoir, 2000 WL 1568184, at *1; accord McLendon, 184 F. App'x at 432.

Plaintiff's statement that she was found to be disabled effective in October 2013 based on her second application indicates that she was able to use the Harris letter and/or other evidence to show that her condition had deteriorated to the point that she was <u>then</u> entitled to benefits for the later period. <u>Shave</u>, 238 F.3d at 597; <u>Falco</u>, 27 F.3d at 164 n.20. Accordingly, her motion to submit new evidence is DENIED.

F.   <u>Plaintiff's Appeal</u>

1.   Substantial evidence supports the ALJ's finding that plaintiff's <u>impairments are not of listing level severity.</u>

The ALJ proceeded through the entire sequential evaluation and found at the fifth step that jobs are available which plaintiff is capable of performing. Relying on <u>Audler v. Astrue</u>, 501 F.3d 446, 448 (5th Cir. 2007), Tate argues that the ALJ made only an impermissible, "conclusory finding" at step three that her impairments do not meet any listing, including specifically Listing 4.02. She contends that the ALJ failed to explain his findings and that his failure prejudiced her because there is substantial evidence that she meets Listing 4.02 for chronic heart failure and Listing 6.02 for chronic renal disease.

Even if the ALJ's explanation was not extensive,

> [p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. [Plaintiff] has noted several occasions where the ALJ did not thoroughly address each aspect of the record. Yet when dealing with such an extensive and multi-faceted record, there will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here.

Giles v. Astrue, 433 F. App'x 241, 251 (5th Cir. 2011) (quotation omitted) (citing Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Unlike Audler, the ALJ's finding that Tate's impairments do not meet any listing, and his failure to mention Listing 6.02 specifically, do not prejudice plaintiff because substantial evidence does not support a finding that she meets either listing. Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009). "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco, 27 F.3d at 162).

"An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that

listings-level impairments are not present." <u>Gewin v. Astrue</u>, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), <u>report & recommendation adopted</u>, 2011 WL 3954877 (W.D. La. Sept. 6, 2011) (citing <u>Zebley</u>, 493 U.S. at 530-31; <u>Selders</u>, 914 F.2d at 620); <u>accord</u> <u>Taylor v. Astrue</u>, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *8 (N.D. Tex. June 27, 2011), <u>report & recommendation adopted</u>, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), <u>aff'd</u>, 706 F.3d 600 (5th Cir. 2012). Tate must identify specific medical evidence showing that she meets <u>all</u> the criteria of either Listing 4.02 or 6.02.

Listing 6.02 covers "[i]mpairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months." 20 CFR Pt. 404, Subpt. P, App. 1, § 6.02. The Commissioner does not dispute that Tate has chronic renal disease. Tate argues that she meets paragraph 6.02(A), which requires evidence of "[c]hronic hemodialysis or peritoneal dialysis (see 6.00E1)." <u>Id.</u> § 6.02(A). Paragraph 6.00(E)(1) states that "[a] report from <u>an acceptable medical source</u> describing the chronic renal disease and the need for ongoing dialysis is sufficient to satisfy the requirements in 6.02A." <u>Id.</u> § 6.00(E)(1) (emphasis added).

Tate contends that the letter from Harris dated April 16, 2013, establishes that she needs dialysis and contains an admissible, retrospective medical diagnosis relating back to the relevant time period. Plaintiff's memorandum, Record Doc. No. 18 at p. 5 (citing <u>Likes v. Callahan</u>, 112 F.3d 189, 190 (5th Cir. 1997) ("[R]etrospective medical diagnoses, uncorroborated by contemporaneous medical reports but corroborated by lay

evidence relating back to the claimed period of disability, could support a finding of past impairment . . . .  Retrospective medical diagnoses constitute relevant evidence of pre-expiration [of insured status] disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates.").

Harris's letter is not substantial evidence that plaintiff meets Listing 6.02.  First, it is not record evidence.  In denying review, the Appeals Council stated that it had "looked at," but did not consider, the letter because it concerns a <u>later</u> time and "does not affect the decision" of the ALJ.  The Appeals Council therefore returned the letter to Tate and did <u>not</u> make it a part of the record.  (Tr. 5).  <u>Cf</u>. <u>Higginbotham v. Barnhart</u>, 405 F.3d 332, 336, 337 (5th Cir. 2005) ("[W]hen the Appeals Council denies review after <u>considering</u> new evidence, the [Commissioner's] final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained <u>correct despite the new evidence</u>."  "[T]he Appeals Council noted in its letter denying Higginbotham's request for review that it <u>had considered</u> [the evidence submitted to it] . . . .") (emphasis added).

Second, for the reasons stated above in denying Tate's motion to submit the letter to the court, the evidence is not new and material, does not relate back to the relevant time period, could not reasonably be expected to change the outcome and does not warrant a remand to be made a part of the record.

In addition, Harris, a social worker, is not "an acceptable medical source" whose opinion can "establish" a medically determinable impairment.  20 C.F.R. § 404.1513(a).

Her statement that Tate has a diagnosis of end stage renal disease and requires dialysis therefore cannot satisfy the requirements of Listing 6.02(A) and 6.00(E)(1). The medical evidence in the record shows that plaintiff was consistently diagnosed with stage 4 chronic kidney disease, which is one stage earlier than end stage renal disease.[7] (Tr. 204, 254, 256, 260-61, 270, 279). Thus, no "express retrospective medical opinion relating back to the insured period" addresses the onset date of Tate's diagnosis of end stage renal disease and her need for dialysis. McLendon v. Barnhart, 184 F. App'x 430, 432 (5th Cir. 2006) (citing Likes v. Callahan, 112 F.3d 189 (5th Cir. 1997); Ivy v. Sullivan, 898 F.2d 1045 (5th Cir. 1990)). Harris's letter, "when considered in light of the entire record, does not establish the existence of [plaintiff's] severe medical impairment [requiring dialysis] as far back as [the alleged onset] date." Id.

Tate also argues that she meets Listing 4.02 because she has congestive heart failure and a ventricular ejection fraction of 30 to 35 percent. A person is disabled under this listing if she has "[c]hronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2.[8] The required level of severity for this

---

[7]Chronic kidney disease worsens through five stages. At Stage 4, kidney function is severely reduced and treatment consists of planning for end stage renal failure. Stage 5 consists of very severely reduced kidney function, or end stage kidney failure, at which time the treatment is dialysis or a kidney transplant. Temple University Hospital website, http://kidney.templehealth.org/content/stages.htm (Temple Univ. Health Sys., Inc. 2014) (visited on Sept. 5, 2014).

[8]Listing 4.00(D)(2) requires cardiomegaly (enlarged heart) or ventricular dysfunction shown by medically acceptable imaging. Id. § 4.00(D)(2)(a). The claimant's "medical history and physical examination should describe characteristic symptoms and signs of pulmonary or systemic congestion or of limited cardiac output associated with the abnormal" radiographic findings. Id. § 4.00(D)(2)(b).

impairment is met when the requirements in <u>both [paragraphs] A and B</u> are satisfied." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02 (emphasis added).

Chronic heart failure is "the inability of the heart to pump enough oxygenated blood to body tissues. This syndrome is characterized by symptoms and signs of pulmonary or systemic congestion (fluid retention) or limited cardiac output." <u>Id.</u> § 4.00(D)(1)(a). The type of chronic heart failure at issue here is "[p]redominant systolic dysfunction (the inability of the heart to contract normally and expel sufficient blood), which is characterized by a dilated, poorly contracting left ventricle and reduced ejection fraction (. . . [the ejection fraction] represents the percentage of the blood in the ventricle actually pumped out with each contraction)." <u>Id.</u> § 4.00(D)(1)(a)(i). Paragraph A of Listing 4.02 is satisfied by the medically documented presence of "[s]ystolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or <u>ejection fraction of 30 percent or less</u> during a period of stability (not during an episode of acute heart failure)." <u>Id.</u> § 4.02(A) (emphasis added).

Substantial evidence supports the ALJ's finding that Tate does not meet the listing. First, the record does not substantially support a finding of congestive heart failure <u>while on a regimen of prescribed treatment</u>. Although plaintiff testified that she was treated by

---

Symptoms of congestion or limited cardiac output include easy fatigue, weakness, shortness of breath (dyspnea), cough or chest discomfort. <u>Id.</u> § 4.00(D)(2)(b)(i). Signs include hepatomegaly (enlarged liver), ascites (fluid accumulation in the peritoneal cavity), increased jugular venous distention or pressure, rales (an abnormal respiratory sound), peripheral edema (abnormal fluid accumulation in the extremities) or rapid weight gain. <u>Id.</u> § 4.00(D)(2)(b)(ii).

a primary care physician, Dr. Vu, and there are references to Dr. Vu as a referral source in some of the medical records, the record contains no medical reports from Dr. Vu. Nor did plaintiff consistently see any other treating physician, except for three visits (and one forgotten appointment) to a nephrologist, Luis Gabriel Uribe, M.D., between September 22, 2011 and December 8, 2011.

As the ALJ noted, Tate sought treatment sporadically, primarily on an emergency basis, and had a history of noncompliance with prescribed treatment. She was admitted to Ochsner Medical Center ("Ochsner") on August 8 through 10, 2010, for a hypertensive emergency with a secondary diagnosis of cardiomyopathy,[9] probably due to longstanding uncontrolled hypertension. (Tr. 174). Plaintiff was seen again in the Ochsner emergency room on October 7, 2010, for evaluation of high blood pressure. Although she was in no distress, she was sent to the emergency room from a clinic where she had gone to seek new prescriptions for hypertension. She stated that she had not filled the prescriptions she received on August 10, 2010, but she had continued to take clonidine.[10] Tate decided to leave the emergency room despite her inadequate blood pressure control. The

---

[9]Cardiomyopathy is any structural or functional disease of heart muscle that is marked especially by enlargement of the heart, hypertrophy of cardiac muscle or rigidity and loss of flexibility of the heart walls. MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/cardiomyopathy (visited Sept. 8, 2014).

[10]Clonidine (brand name Catapres) is used alone or with other drugs to treat high blood pressure. It lowers blood pressure by widening and relaxing the blood vessels, allowing the blood to flow with less resistance. PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/catapres (visited Sept. 8, 2014).

attending physician gave her three new prescriptions and counseled her concerning her illness, management and aftercare, and the need for a low-salt diet, exercise plan and weight loss. The doctor "strongly encouraged medication compliance" and told her to follow up "as previously arranged." Plaintiff responded that she would follow up with a primary care provider the next day. (Tr. 190).

There are no records of any subsequent treatment until Tate was admitted to River Parishes Hospital ("River Parishes") nine months later on May 10, 2011. The initial assessment at River Parishes emergency room was dyspnea, most likely from congestive heart failure exacerbation and hypertensive emergency. (Tr. 201). Plaintiff left River Parishes against medical advice on May 13, 2011, without having undergone a scheduled left heart catheterization. Her primary discharge diagnosis was hypertensive emergency with a secondary diagnosis of congestive heart failure. (Tr. 202). Although she reported that she had been compliant with hypertension medications, a consulting physician noted that she had a history of severe refractory hypertension and noncompliance. (Tr. 205).

Tate was seen by internist Dr. Mandich at the request of the Commissioner on August 24, 2011. Dr. Mandich also reviewed plaintiff's medical records and noted that she had not had any treatment since her discharge from River Parishes. Dr. Mandich diagnosed severe hypertension, poor medical compliance, probable chronic renal insufficiency secondary to hypertension, hypertensive urgency and anemia most likely secondary to chronic renal insufficiency. (Tr. 234-38).

On September 30, 2011, Tate was evaluated by cardiologist Clement C. Eiswirth, Jr., M.D. He diagnosed history of congestive heart failure with hypertension and renal failure, uncontrolled hypertension and obesity. (Tr. 324, 325).

Tate went to the Ochsner emergency room on November 11, 2011. She was diagnosed in the emergency room with acute myocardial ischemia[11] and "hypertensive emergency, no CHF [congestive heart failure]" (Tr. 291), and was admitted to the hospital. Her principal discharge diagnosis on November 14, 2011, was malignant hypertension with secondary diagnoses of morbid obesity, mild diastolic heart failure, chronic kidney disease stage 4 and chronic anemia secondary to renal failure. She was to follow up with her primary care physician and her nephrologist within a few days of discharge. (Tr. 279-80). There is no evidence that she saw her primary care doctor.

On December 8, 2011, Dr. Uribe saw Tate and diagnosed chronic kidney disease stage 4, severe high blood pressure and congestive heart failure. He explained to her that she needed to be 100 percent in compliance with her treatment regime. (Tr. 254). It is reasonable to conclude that he would not have noted the necessity of this explanation unless Tate was not in compliance. Thus, plaintiff's sporadic treatment records do not substantially support a finding that she experienced chronic heart failure <u>while on a regimen of prescribed treatment</u>, as required to meet Listing 4.02.

---

[11]"Ischemia is a deficient supply of blood to a body part (as the heart or brain) due to obstruction of the inflow of arterial blood (as by the narrowing of arteries by spasm or disease)." <u>MedLine Plus Medical Dictionary</u>, http://www.merriam-webster.com/medlineplus/ischemia (visited Sept. 8, 2014).

In addition, Tate was never assessed with an "ejection fraction of 30 percent or less," as required by paragraph 4.02(A). On August 9, 2010, an echocardiogram showed mildly depressed left ventricular function with an estimated ejection fraction of 45 percent. (Tr. 170, 175). On May 10, 2011, another echocardiogram revealed a mild to moderate decrease in systolic function with an estimated ejection fraction of 40 to 45 percent. (Tr. 202, 203). A myocardial rest/stress test on May 13, 2011, showed a left ventricular ejection fraction of 35 percent. (Tr. 222). A third echocardiogram on November 11, 2011, revealed a moderately reduced estimated ejection fraction of "approximately 30 to 35 percent." (Tr. 314). Thus, all of plaintiff's ejection fraction estimates were for <u>more</u> than 30 percent, not 30 percent or less.

In the absence of meeting the paragraph A requirement, Tate's heart condition cannot satisfy Listing 4.02. Accordingly, this assignment of error is meritless.

> 2.      Substantial evidence supports the ALJ's residual functional capacity and credibility findings.

At the fourth step of the sequential analysis, the ALJ found that Tate has the residual functional capacity to perform sedentary work, except that she must have a sit/stand option and be able to elevate her legs twice a day for ten minutes at a time. Plaintiff bears the burden of proving that she suffers from a disability under the first four parts of the sequential inquiry. <u>Perez</u>, 415 F.3d at 461.

In her second assignment of error, Tate argues that the ALJ failed to include accommodations for her incontinence in his residual functional capacity assessment, including her need to take frequent restroom breaks and her need for dialysis. She contends that a proper evaluation of her combined impairments compels a finding that she would miss work as often as three times a week and that the vocational expert testified that such a limitation would preclude maintaining any jobs.

Plaintiff's third assignment of error is that substantial evidence does not support the ALJ's credibility finding. The court considers this together with Tate's arguments regarding her residual functional capacity because the ALJ's findings regarding both issues are intertwined. Plaintiff argues that the ALJ discounted her credibility based on erroneous findings that the record contains no evidence that she is a candidate for dialysis and that she has a history of noncompliance with her medications and treatment.

Substantial evidence supports the ALJ's residual functional capacity and credibility findings. The medical evidence is extensive and the ALJ's summary of it was thorough and accurate. As the ALJ stated, the record as a whole does not substantially support the subjective complaints and functional limitations that Tate alleges result from her medical conditions.

Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. Luckey v. Astrue, 458 F. App'x 322, 326 (5th Cir. 2011) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir.

1985)); Perez, 415 F.3d at 462. The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in his articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007). The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for his credibility findings, supported by the evidence. Luckey, 458 F. App'x at 324; Giles v. Astrue, 433 F. App'x 241, 249 (5th Cir. 2011); Newton, 209 F.3d at 452. The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is necessary. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ explained why he found that plaintiff's subjective symptoms and alleged limitations were not credible and were inconsistent with the evidence as a whole. As the ALJ stated, that evidence includes Tate's history of noncompliance with her medications,

34

despite repeated counseling about the importance of compliance (Tr. 177, 190, 202, 254); her failure to follow up with treatment recommendations, including twice leaving a hospital against medical advice (Tr. 190, 202-03); and the intermittent, emergency-based way she obtained treatment for her chronic conditions. The ALJ noted the absence of any medical evidence that a health care provider had told plaintiff to elevate her legs twice a day or lie down for an hour at a time because her legs go numb, or that she would imminently need dialysis. Finally, the ALJ found that Tate's failure to pay income tax on her cash earnings also called her credibility into question. All of these findings are substantially supported by the record.

As discussed above, the medical records do <u>not</u> indicate that Tate was a candidate for dialysis at the time of the ALJ's decision. Tate testified that she was not scheduled for dialysis and that her doctor had not said how long it would be before she needed it. Even if the letter from social worker Harris were admissible, it is evidence only that Tate needed dialysis as of April 16, 20<u>13</u>, eleven months after the ALJ's decision, because of end stage renal disease. At the time of the ALJ's decision, Tate had been diagnosed with stage 4 chronic kidney disease, <u>not</u> with end stage renal disease requiring dialysis. Despite plaintiff's testimony that she has difficulty holding her urine, the medical records contain only two mentions of occasional incontinence, on May 10 and September 30, 2011. (Tr. 204, 325). On other visits to health care providers, Tate denied that she had any urinary changes or complaints. (Tr. 189, 235, 283). Substantial evidence thus

supports the ALJ's finding that plaintiff was not a candidate for dialysis at the time of his decision and his rejection of her allegation that she would need to miss work as often as three times a week because of her kidney disease.

The ALJ noted that Tate's record of treatment was intermittent and emergency-based and that she often failed to follow up with recommended treatment. In particular, the ALJ observed that she did not have her prescriptions filled after she was discharged from Ochsner on August 10, 2010, for a hypertensive emergency due to longstanding uncontrolled hypertension (Tr. 174), and that her failure to do so led to her repeat emergency room visit on October 7, 2010, for evaluation of extremely high blood pressure. (Tr. 189-90). Dr. Mandich stated in her report that plaintiff has Medicaid. (Tr. 237). Based on this information, the ALJ discounted the credibility of Tate's assertion that she could not afford to pay for her medications. (Tr. 25).

Plaintiff argues that she was noncompliant with medications because she could not afford them, even with Medicaid. A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling. However, "[i]f a claimant cannot afford a prescribed treatment, an otherwise remediable condition may be deemed disabling." Tamez v. Sullivan, 888 F.2d 334, 336 (5th Cir. 1989) (citing Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)) (additional citations omitted).

Tate did not testify that she could not pay for her medications. The medical records contain only one instance when she told a provider that she could not afford to

buy medicine.  On August 8, 2010, she told the Ochsner emergency room doctor that she had just been released from prison two weeks earlier and had not taken any blood pressure medicine since then because she could not afford it.  (Tr. 174).  On October 7, 2010, Tate reported that she had not filled the prescriptions she had received upon her discharge from the hospital, but that she now wanted to obtain new prescriptions and fill them because she did not like the clonidine she had been taking.  (Tr. 189).  There is no evidence at this or any subsequent health care visit that Tate could not afford her medications.  When "[t]he record contains no further mention of [plaintiff's] ability to pay for . . . treatment," there is "no reason to conclude that [she] is unable to afford the prescribed treatment . . . simply on the ground that [s]he was unable to pay for a prescription" on a single occasion in 2010.  Tamez, 888 F.2d at 336.

Additionally, in Cornett v. Astrue, 261 F. App'x 644, 649 n.3 (5th Cir. 2008), Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990), Tamez and Harper v. Sullivan, 887 F.2d 92, 97 (5th Cir. 1989), the Fifth Circuit held that the ALJ had properly considered the claimant's failure to take medication or follow a prescribed course of treatment, even though each plaintiff claimed that these failings were prompted by his indigence.  The court held in each case that plaintiff's inability to pay was not relevant because the evidence did not establish that he would have been disabled with or without regular medical treatment.  The Lovelace "'rule [that an otherwise remediable condition may be deemed disabling if a claimant cannot afford a prescribed treatment] does not

encompass claims of persons who can prove no disability but only seek benefits as a means of affording care that might conceivable [sic] prevent a disability.'" Harper, 887 F.2d at 97 (quoting Burnside on Behalf of Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988)). Here, Tate failed to carry her burden to show that she suffers from a disability, which renders irrelevant any inability to pay for medications (which she also has not proven).

Plaintiff further argues that the ALJ failed to follow the evidentiary and notice requirements imposed by Social Security Ruling ("SSR") 82-59 if noncompliance is to be the basis for denying her benefits. However, that did not occur here. The ALJ appropriately considered Tate's noncompliance for the purposes of determining her credibility and residual functional capacity. (Tr. 24-25). It is well established that a claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an impairment and may be used in conjunction with the medical reports to discount complaints of disabling pain or other limitations. Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony, 954 F.2d at 295; Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa, 895 F.2d at 1024; see Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)) (substantial evidence supported ALJ's credibility determination based on findings that plaintiff exaggerated his symptoms and failed to follow prescribed treatment); Austin v.

Apfel, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego, 940 F.2d 945) ("The ALJ did not err in failing to credit Austin's subjective complaints of pain as those complaints were contradicted by medical reports and by Austin's decision to forego pain medications, corrective surgery, and ongoing treatment.").

SSR 82-59 does not apply in this case because the ALJ did not state that he found Tate not disabled because of her noncompliance with treatment. The ruling only applies to "individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work." SSR 82-59, 1982 WL 31384, at *1 (1982). SSR 82-59 "explains the circumstances in which the Secretary may deny benefits to an otherwise disabled individual on the basis that the claimant has failed to follow . . . prescribed treatment" and "only applies to claimants who would otherwise be disabled within the meaning of the Act." Owen v. Astrue, 551 F.3d 792, 800 n.3 (8th Cir. 2008) (citing Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001)); accord Myers v. Comm'r of Soc. Sec., 456 F. App'x 230, 232 (4th Cir. 2011); Vega v. Comm'r of Soc. Sec., 358 F. App'x 372, 375 (3d Cir. 2009). In other words, SSR 82-59 only applies if plaintiff is disabled and the prescribed treatment could be expected to restore her ability to work.

The ALJ here did not conclude that Tate was disabled, but had failed to follow prescribed treatment and therefore was not entitled to SSI. Rather, the ALJ

> analyzed the evidence of [plaintiff's] noncompliance within the context of
> his analysis of [her] credibility. The ALJ never determined that [plaintiff]
> was disabled and that compliance would restore [her] ability to work. By
> contrast, the ALJ determined that in spite of [plaintiff's] noncompliance,
> [she] was not disabled. The ALJ used the evidence of [plaintiff's]
> noncompliance solely to weigh the credibility of [her] subjective claims of
> pain. Social Security Ruling 82-59 does not restrict the use of evidence of
> noncompliance, it merely delineates the reasons that the Social Security
> Administration may deny benefits to an <u>otherwise disabled person</u> because
> they fail to comply with their doctor's prescribed treatment. Therefore,
> Social Security Ruling 82-59 does not apply to this case.

<u>Holley</u>, 253 F.3d at 1092 (emphasis added); <u>accord</u> <u>Vega</u>, 358 F. App'x at 375.

The ALJ properly considered the record as a whole in determining that Tate's subjective complaints were not fully credible. <u>Hoelck v. Astrue</u>, 261 F. App'x 683, 686 (5th Cir. 2008) (citing <u>Hollis v. Bowen</u>, 837 F.2d 1378, 1384-85 (5th Cir. 1988); <u>Leggett v. Chater</u>, 67 F.3d 558, 565 (5th Cir. 1995)). Having done so, the ALJ's finding that she has the residual functional capacity to perform sedentary work, except that she must have a sit/stand option and be able to elevate her legs twice a day for ten minutes at a time, is substantially supported by the evidence as a whole, including particularly the opinions of the consultative examiner, Dr. Mandich; Tate's treating nephrologist, Dr. Uribe; and the physicians who treated her at Ochsner, River Parishes and East Jefferson Medical Center. The ALJ assigned great weight to all of these opinions, which are consistent and well supported by objective medical evidence and the other evidence of record.

The mere diagnosis of an impairment, even if it is a severe impairment under Social Security regulations, does not establish a claimant's disability. <u>Bordelon v.</u>

<u>Astrue</u>, 281 F. App'x 418, 421 (5th Cir. 2008) (citing <u>Hames v. Heckler</u>, 707 F.2d 162, 165 (5th Cir. 1983)); <u>McLendon v. Barnhart</u>, 184 F. App'x 430, 431(5th Cir. 2006); <u>Harris v. Barnhart</u>, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); <u>Estok v. Apfel</u>, 152 F.3d 636, 640 (7th Cir. 1998); <u>Jones v. Sullivan</u>, 954 F.2d 125, 128 (3d Cir. 1991); <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 87-88 (1st Cir. 1991); <u>Martin v. Chater</u>, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing <u>Anderson v. Sullivan</u>, 925 F.2d 220, 222 (7th Cir. 1991)).  Plaintiff "'must show that [she] was so <u>functionally impaired</u> by [her diagnosed impairments] that [she] was precluded from engaging in any substantial gainful activity.'"  <u>Bordelon</u>, 281 F. App'x at 421 (quoting <u>Hames</u>, 707 F.2d at 165); <u>accord</u> <u>Anthony</u>, 954 F.2d at 293; <u>Hamauei v. Astrue</u>, No. 10-85, 2011 WL 802398, at *7 (E.D. La. Feb. 28, 2011) (quoting <u>Hames</u>, 707 F.2d at 165).

None of plaintiff's physicians placed any restrictions on her activities of daily living.  Indeed, they encouraged her to engage in an exercise plan.  The medical evidence does not support many of the symptoms about which plaintiff testified, such as the side effects of her medication, her frequency of urination, numbness in her extremities, and her need to elevate her legs and/or to lie down for an hour or more each day.

"The ALJ found the medical evidence more persuasive than the claimant's own testimony.  These are precisely the kinds of determinations that the ALJ is best

positioned to make." <u>Falco</u>, 27 F.3d at 164.  Accordingly, these assignments of error lack merit.

CONCLUSION

The ALJ's finding that plaintiff's congestive heart failure and chronic kidney disease are not of listing level severity is supported by substantial evidence.  Substantial evidence supports the ALJ's findings regarding Tate's credibility and that she has the residual functional capacity to perform sedentary work with the limitations noted in the ALJ's decision.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[12]


New Orleans, Louisiana, this ___12th___ day of September, 2014.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[12]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.